# UNITED STATES DISTRICT COURT
# SOUTHERN FLORIDA   DISTRICT

Michelle Hudson Hale Plaintiff

VS

Adkins, Kelston, Javez PC

FILED BY _Cvs_____ D.C.

FEB 11 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

### JURY TRIAL DEMAND

# COMPLAINT

Michelle R Hudson, plaintiff, in the above styled cause, sues above referenced defendant(s) for assisting in the transfer of property, bank and trust accounts of whom belonged to the plaintiff's husband before being granted o the plaintiff, wife and heir of the estate left to the plaintiff.  Such items were confiscated by said defendants who willfully, spitefully and intentionally obtained necessary documents giving ownership to BP stock.  The plaintiff learned in 2020 that such Illegal probate authority was given to known associates who had no legal right to allow for such transfer of BP stock. The defendants worked together or separately to exchange necessary ownership rights between parties necessary to change, transfer or relinquish ownership of accounts belonging to the  plaintiff and stopping access to those funds to date giving  cause for this legal action which includes the following reasons for stating a claim:

# I.               **JURISDICTION / VENUE**

1.         Title 28 Section 1391(b) US Code FRCP -

Jurisdiction under U.S. Code Title 28 Part IV

Chapter 85 - Code 1332.

2.         This action also applies to Jurisdiction of Person- which

gives Jurisdiction regardless of location of Persons and

is applicable to Diversity Actions regarding locations of

persons regardless of location.

3.         The U.S. Constitution provides for concurrent federal

Jurisdiction in actions between citizens of different states.

Case Reference  Strawbridge v. Curtis 7 U.S. 267 (1806).

4.         Proper Venue is applied as it relates under Section

139 (b) (2), applicable to districts where future harm

3.

## **PLAINTIFF/PARTIES**

1.   Plaintiff Michelle Hudson Hale, is a citizen of the U.S.,
and has been since birth, the Plaintiff currently
resides in Miami, Florida.

7.   AJjoiner  parties, are Children of Hale & Hudson.
Additional parties may be added during the course of
this procedure where necessary.

8.   Ajoiner Cases associated to this complaint consists of
Chase Bank - Case#14-32293 CA 24, Civil Court Miami,

Florida, Miami Dade County, and Wells Fargo Bank,
Case# 1:15-CV-20287-DPG, Federal Court, Miami Florida,
Miami Dade County.

2.

## *II.*                    <u>**DEFENDANTS**</u>

1.   WilmerHale  & Hale Dorr are both  Law Firms located at 60 State

Street, Boston Ma, 02109, Owned Silverbridge-  A company that managed

investments and Advisors.

2.      .Schmidt & Federico. P.C.-  Law Firm Located at 200 Berkeley

Street, 17th Floor,  Boston Ma 02116  info@schmidt-federico.com

3.  Wells Fargo Bank,  A Banking Institution, has corporate

offices are located at 1156 Avenue Of The Americas, N.Y.  N.Y, 10036

4.  Adkins, Kelston, Javez PC, is a law firm located at

90 Canal Street, #500  Boston, Ma, 02114.

5.    Choate Hall & Stewart LLP, is a law firm located at

Two International Place, Boston, Ma 02110.

6.     Chase Bank

45 Wall Street   NY,  NY   10005

4.

# III.   REASON FOR STATING A CLAIM

## I.        TORT  FRAUD

**Defendants are able to keep control of the Hale Estate of which they Manipulated and controlled before William Schmidt would be granted Personal Representative status and Estate control in 2017 necessary to control and sell remaining assets and the following actions of the Defendants can validate known fraudulent activity as it pertains to the Peter R Hale Estate and Trust are consistent since my knowledge of such activity which began in 2007 and are as follows:**

A.      Silverbridge., a corporation, owned by WilmerHale, and all Defendants

refused to liquidate the accounts belonging to Plaintiff's husband before his death.

Those accounts were transferred to Michael Fay before and after his death with the help

of Wilmer Hale, A Newly appointed Personal Represenative,   William Schmitt would

Make it possible to continue their forty year practice of having complete control of

the Peter R Hale Estate ,  bank accounts, trust accounts and stocks

Exclusively and continue to refuse to surrender holdings to the

Plaintiff, before or after the death of husband Peter R. Hale.


Michael Fay and William Schmidt would admit a fake will into record necessary for

obtaining control of assets remaining or spent. That  was once a part of the Peter R

Hale estate.  This unethical and illegal practice  violates  SEC Rules

(15c1-7),  and the Securities Exchange Act 0f 1934, which prohibits a person from

using a manipulative, deceptive, or other fraudulent device"-  to complete a
5.

securities transaction.  The rule is codified at 17 C.F.R. 240.15c1-7.  17 CFR

270.17j-1-3(2)-(3),(4) and (5), and the  Personal Investment Activities Of

Investment Company Personnel,

SEC Antifraud Rule 206(4)-8 for Advisers to Pooled Investment Vehicles,  The

Investment Advisers Act of 1940, Rule 204A-1, The Investment Company Act Of 1940,

requiring disclosure of financial condition and investment policy when stocks are sold,

The Investment Advisers Act of 1940,  and the Dodd-Frank Wall Street Reform and

The Consumer Protection Act of 2010, including disclosure and transparency.

There have been acts committed by Defendant(s), that violate all Federal Securities

Laws including, the Securities Act Of 1933, (15 U.S.C. 77a-aa), the Securities Exchange

Act of 1934  (15 U.S.C. 78a-m), the Sabanes-Oxley Act of 2002 (Pub. L. 107-204, 116

Stat.745 (2002), The Investment Company Act of 1040 (15 U.S.C. 80a), the Investment

Advisors Act of 1940 (15 U.S.C. 80b),  Title V of the Gramm-Leach-Bliley Act (Pub. L.

106-102, 113 Stat.1338 (1999),  the  Bank Secrecy Act  ( 31 U.S.C. 5311-5314;

5316-5332), as applied to funds and investment advisors, any and all rules above that

have been adopted by the commission or the Department Of Treasury.


It is not certain if each holder of Silverbridge Securities became the sole owner of each

Individual  stock holding in this account or if they were transferred after sail or merger .

Of the Silverbridge Accounts held by WilmerHale.


2.      Necessary for one to own securities, they must be bought,  and then traded

6.

between, holders found in the Wall Street Securities Exchange.  in this instance we begin with Silverbridge, a known Finance Investment Company.

At some point Chase Bank acquired  possession and of a Hale Trust Stock  from sources to be determined. They become transfer agents who control who completes a sales or transfer of stock.

3.To do this one must  have been granted the rights necessary to sell securities for clients, to receives service fees, for management of stock

As well as acceptance of payment whereby that initiate can be paid and as a result can profit from buying and selling stock owned by anyone. Chase Bank, Wells Fargo Bank,  were also on the Slverbridge Account owned by WilmerHale Hale Dorr.,  It is not know where substantial amounts of money from each account transferred to when this Hale Trust Account was liquidated belonging to Chase Bank and Wells Fargo who both suddenly are transfer agents after the death of Mr. Hale.

All Stocks can individually bought and sold by anyone who  employs a broker who conduct business as a brokerage company.  Brokers are employed by Corps, are brokers or are working  independently to broker sales, buys, trades, and are paid with commissions and fees , from clients.

4.      Silverbridge,, was a corp, owned by WilmerHale, it employs brokers or uses outside brokers to buy or sell stock, for profit.  It must pay out fees and gives possible commission.  Any company that allows for many sales and trades for clients because each sale or buy generates fees and or commissions.

7.

5.      Silverbridge., a corporation, owned by WilmerHale,  refused to liquidate all accounts upon request to sell and trade stocks.  They chose to shut down the business,

Transfer accounts to an entity known only by the party, Wilmer Hale and Michael Fay Wells Fargo Bank, Chase Bank, Wilmer Hale Hale Dorr,, and William Schmidt would Be major participants necessary to finalize deals or attempt to finalize the sale, or allow third parties to finalize real estate transactions as it pertained to this estate.

6.    Wells Fargo Bank, Chase Bank and any one Defendant could sales stock or real estate belonging to the Hale estate, when one member of this group can obtain a Personal Representative status. William Schmidt was the party who would submit a will that was superseded by a will granting is authority to the plaintiff. With this will withheld from the Suffolk County Probate Court, compete control of assets remained in the possession of those who wanted to liquidate assets in the Hale Trust Account as well As assets left by other holdings from Hale Trusts belonging to Trusts of prior family members who Trusted assets to the Hale Trust.

These unethical and illegal practices violate SEC Rules (15c1-7), The Securities Exchange Of 1934 (The Act) prohibits a person from using a manipulative, deceptive, or other fraudulent device" to complete a securities transaction.  The rule is codified at 17 C.F.R. 240.15c1-7.  17 CFR 270.17j-1-3(2)- (3),(4) and (5), Personal Investment Activities Of Investment Company Personnel,

SEC Antifraud Rule 206(4)-8 for Advisers to Pooled Investment Vehicles,  the
8.

Investment Advisers Act of 1940, Rule 204A-1, The Investment Company Act Of 1940, requiring disclosure of financial condition and investment policy when stocks are sold,

The Investment Advisers Act of 1940,  and the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, including disclosure and transparency.

The same Plaintiff involved in control of the estate and taking on Trustee duties and actively participating, communicating and making decisions  regarding sales, trades and buys, before the death of the rightful owner would not relinquish roles thereafter.  They  would continue the same practice with no oversight, having virtually unlimited destruction  to manipulate accounts to obtain self-serving distributions to fulfill their own objectives taking no consideration of the financial loss and burden placed on the plaintiff, causing harm to the Plaintiff,  loss of account holdings and having no record  of transfer and or sale of each stock holding, This would result in great economic loss,  poor health and death of husband as alleged in original case filings regarding Chase Bank, and Wells Fargo Bank in January of 2015. (See Cases).

7.      Harm results when use of account(s), without the approval from the legal account holder who is being denied access and use accounts that should belonging  the Plaintiff,.The same funds were requested to payoff the mortgage of home at 168 Bellingham St, Chelsea, Ma 02150. It also needed  wheelchair access and the home at 168 Bellingham St, Chelsea, Ma, 02150, had 10-12 stairs in entrance and back of home that did not provide assess to home for persons using a wheelchair.  The home would go into foreclosure in 2015, or 2016, exact date still being researched as recorded

9.

regarding the sale are sill in location process. Defendants, being totally responsible for home default would go on to sell the home as a result of a forced default because the trustee refused to pay past due mortgage,

8.      Had defendant(s) complied to requests to liquidate Silverbridge, this objective could have been accomplished. Accounts are still in disarray.

9.      WilmerHale refused to give account of Hale Trust Portfolio that included Plaintiffs, father and grandfather and possibly mother, now deceived, and after death of Mr. Hale.

10.      Silverbridge refused to provide monthly statements for the Hale Trusts, its not certain how many times stocks were sold, traded or bought but It is certain in happened many times, generated fees and commissions, and such acts continue to this day. Example, BP.PLC, - The Plaintiff received letters from Wells Fargo Bank and Chase Bank stating both were owners of the stock.  This could only happen if shares were sold by a broker who split the account between the two parties doing a split, or accounts were duplicated.  It is not certain who owns the account, who is the transfer agent, how many times it has been switched between transfer agents,  who initiate buys, sells and transfers but records will show many transactions occurred.

11.      Example,  Zimmer Holdings sold this stock as well dividends from account opened in 2012, Plaintiff was told it was transferred to them in 2014, and would pay dividends for this period only.  When asking where transfer came, was told ComputerShare who is the largest transfer agent for investments worldwide. However, 10.

Computershare would go on to refuse to disclose who transferred ownership to them. I was told Compterhare was transfer agent for stock held by Chase and Wells Fargo Bank, and they would deny account ownership making it impossible to Know the legal transfer agent was.

Who transferred the stock to ComputerShare is undisclosed as ComputerShare refuses to disclose any information regarding sale, buying or transfer of this account, but states Air Products & Chemicals, Raytheon and several other accounts were sold or traded, without the Plaintiff knowledge of who and when the transactions were done as the Plaintiff is the only person with the legal right to make buy, or sell requests. This activity is being done with (3) to 4) trust accounts held by WilmerHale to this day, if all accounts have not been liquidated by WilmerHale. Reference Exhibit (A), which clearly shows many sell and buys transactions that were once part of the Silverbridge Account.

12.   There is a failure to manage accounts necessary to comply to requests for closure of accounts upon request of the shareholder and Trustee Peter R Hale, owner of accounts, dividends, safe deposit boxes, in accounts of several financial and bank institutions. Real Estate, is also included in alleged misuse of such accounts necessary to enrich the needs and desires of Defendant(s) who abandon all interests of Plaintiff's

11.

financial and general well being after being sent a Irrevocable Trust

Amendment to the original trust document after refusal to send a copy of

the revocable trust  Document . They would continue to close bank

Accounts and keep assets, and  refuse to relinquish control of accounts

As well as the Estate of Peter R Hale before and after his passing.


13.   In doing so, there is a clear violation of  federal

and state Securities Laws and Corporate Governing Laws

including the Fraudulent Interstate Transactions

Pursuant to 15 US Code 779- Securities Act of 1933, and

Section 11-2- detailing what is required regarding a specific

Code of Ethics which prohibit Self Dealing Activity and

Conflict. AS well as the  Dodd-Frank Wall Street Reform and

Consumer Protection Act, Title VII; which requires

Transparency, Accountability, according to Section 701 thru

Section 1021.


12.

## IIII.   **NEGLEGANCE**

Plaintiff  is incorporated by reference the allegations of

paragraph; 1 through 41,  as though fully set forth herein.

All officers of the companies took actions that failed to show

a duty of care, loyalty and good faith in business and

including obligations to exercise good business practices

, to act effectively in the operation of

business of that company and to act in the best interest

of the stockholder and each company failed to comply

with basic terms of corporate interests as it applied to

accommodating the needs of the stockholder and not

83.

the needs of the corporation.

The Corporation(s) would go on to recklessly act,

97.

having fore knowledge, such acts will cause losses necessary

to disenfranchise the Plaintiff.  By choosing not to

liquidate accounts by selling all stockholdings and giving

a check to the Plaintiff, to use by the Plaintiff in

2009,  the Defendant, continued a reckless disregard for

the plaintiff, having  full knowledge such acts will result in

a loss of stock holdings resulting from  reckless management.

Accounts remain difficult to trace and recover due to a refusal

to disclose account activity by providing monthly statements.

Defendants violated federal and state statutes, according to

Unfair Business Practices, (Business&mProf. Code 17200 et

seq.) .

All Defendants who are Corporations, with,  officers, lawyers,

trustee's, directors, brokers and representatives of whom,

engaged in transactions that would end in a payment

to one of these parties for commissions, disbursements,

and payment for opening, closing, transferring equity accounts

98.

such as stocks, bonds, securities, and real estate.  The  Defendant(s)

are liable because the Corporation, being the controlling party

or person(s), is liable for injury caused by a representative.

*And such actions continued after the Death of asst owner, Peter R. Hall*

The Plaintiff was harmed by loss of assets, loss of

loss of husband as well as suffering from metal and physical

issues involved with a person with disabilities.  To be proven

with medical records from initial discoveries.

99.

## <u>V.</u>    <u>BREECH OF FIDUCIARY DUTY</u>

Plaintiff  is incorporated by reference the allegations of paragraph; 1 through 41,  as though fully set forth herein.

All officers of the companies in question, owe plaintiff(s) a duty of care, loyalty and good faith in business and fiduciary duty including obligations to exercise good business practices, to act effectively in the operation of business of that company and to act in the best interest of the stockholder and each company failed to comply with basic terms of corporate interests as it applied to accommodating the needs of the stockholder and not the needs of the corporation.  Defendants violated federal and  36(b),  The Investment Company Act which states, Investment Company's have fiduciary duty with respect to the receipt of compensation for  services. Therefore, a breach will occur when an investment Co. pays fees to advisors for transactions

100.

that cause a depletion of assets in the account when the

Plaintiff's trustee attorney is  told by trustee

to a (0) holding amount at the time death of Plaintiffs husband.

See Exhibit (E).

Such acts cannot be justified and no gains were made.

There was not ability to achieve a favorable rate of return on

the account.

101.

Plaintiff incorporate by reference the allegations of paragraph 1 through 41.,as though fully set forth herein.

All officers of the companies in question, owe plaintiff(s) a duty of care, loyalty and good faith in business and fiduciary duty including obligations to exercise good business practices, to act effectively in the operation of business of that company and to act in the best interest of the stockholder and each company failed to comply with basic terms of corporate interests as it applied to accommodating the needs of the stockholder and not the needs of the corporation.

Defendants violated federal and state statutes,

Plaintiff  is incorporated by reference the allegations of paragraph 1 through 41,  as though fully set forth herein.

All officers of the companies in question, owe plaintiff(s) a duty of care, loyalty and good faith in business and fiduciary duty including obligations to exercise good

102.

business practices, to act effectively in the operation of

business of that company and to act in the best interest

of the stockholder and each company failed to comply

with basic terms of corporate interests as it applied to

accommodating the needs of the stockholder and not

the needs of the corporation.

Defendants violated federal and state statutes, such as 36(b),

The Investment Company Act which states, an investment

Company has a fiduciary duty with respect to the receipt of

compensation for services. A breach will occur when an

investment Company goes on to

pays fees to advisors for transactions that cause a depletion of

assets in the account when the Plaintiff's trustee attorney is

told (0) holding amount at the time death of Plaintiffs husband.

Such acts cannot be justified and no gains were made.

There was not ability to achieve a favorable rate of return on

103.

the account.

Silverbridge sells its Financial Advisory Corporation in 2012.

It held accounts belonging to the Peter R Hale Revocable Trust,

owned by Plaintiffs husband.  P.O.A.,  and Trustee  authority w

was   granted Plaintiff, necessary to assisted Husband, Peter R Hale in

requesting sale and receipt of funds-years before this sale occurred.

WilmerHale owned Silverbrdge,  Controllers refuse to liquidate accounts,

and transfer funds.  Controllers engage in self dealing, and a hostile take

over of all accounts and assets within the Hale Holdings by this company.

Stock brokers, trustees, holding company associates, and its

representatives to use and devise any scheme to bankrupt all assets and

holdings within the Peter R Hale Revocable Trust as well as Trusts

privately held for father,grandfather, and possibly grandmother and

mother,all now deceased.

This company had a duty to provide disclosure regarding the sale activity

before and after the sale and did not.  Accounts are now in the possession

of trustee who worked for WilmerHale during the sale, and were transferred

to him and not the shareholder, after the sale.  It is clear there was a sale
104.

and purchase of the Hale Trust Accounts, There were no disclosures

made from Trustee to date, nor from WilmerHale to date regarding sale,

and disposition of Hale accounts after the sale as the acts deliberately

excluded the Plaintiff, who continued to live and was owner of the

property located at 168 Bellingham Street, Chelsea, Ma 02150.  No mail

was ever sent to this address from WilmerHale and Michal Fay who

prevented sale of home, ownership of a home with wheel chair access

and payment of back taxes, necessary to prevent foreclosure buy keeping

and withholding all assets held within the Peter R Hale Trust.

Wells Fargo Bank, Chase Bank, Chase Bank, NA, were clients named on

Silverbridge Statement of Holdings Exhibit (A).  They would go on to hold

accounts from the Hale Trust that had to be transferred to them by

WilmerHale while stating no accounts in their name belongs to the Hale

Trust when it clearly states they were paid stockholders of the Hale Trust.

CoumperShare, AST, are transfer agents.  Accounts from the Hale Trust

would be transferred to them to hold, transfer or sell at their discretion.

105.

All continued to refuse sale of stock to Plaintiff , provide information regarding accounts, activities involving accounts, statements, as well as any and all activity pertaining to the Hale Trust, past and present.  All Corporations acted accordingly, all individuals acted accordingly, who are named Defendants to this case.  The Plaintiff, continues to research these activities which are all in violation of the Antifraud Provisions of  CFR Title 17-Chapter II -Part 240 Section 240.13e-3, (a) and (1) thru 6.   Going private transactions by certain issuers or their affiliates.

106.

# VI.     NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiff incorporate by reference the allegations of paragraph 1 through 36.,as though fully set forth herein.

All officers of the companies in question, owe plaintiff(s) a duty of care, loyalty and good faith in business and fiduciary duty including obligations to exercise good business practices, to act effectively in the operation of business of that company and to act in the best interest of the stockholder and each company failed to comply with basic terms of corporate interests as it applied to accommodating the needs of the stockholder and not the needs of the corporation.

There was no way to suggest the defendant(s) would withhold funds from accounts.  It became clear after weeks of requests to sell.  The halt to account access stopped all thoughts of pursuing legal action, a POA and later a new Trust Document

107.

and Will would result as ways to stop defendant(s) defiant and illegal activities.

The plaintiff had to act as partner for Mr. Hale in all business transactions thereafter.  This job would not have been accepted if knowing in advance, there would be a war with WilmerHale. NonThe Less, this would be the outcome.  This would cause daily activities of the Plaintiff to exceed the three hour threshold required for persons with a disabilty of Plaintiff.  This would cause great pain and distress to entire body of the Plaintiff who had to exercise daily activity necessary to keep cashflow necessary to pay for expenses as they applied to the Hale household.
The unorthodox activities of the defendant would cause moving several times to other states as it was dangerous to continue living  without access in and out of the home.  The plaintiff could not assist husband in and out of home due to disabilities and Mr. Hale felt too constricted to the home which had on wheelchair  access in and out of the home. How to care for Mr. Hales disability walking, financial and health issues as well as the Plaintiff's proved quite

108.

mentally and physically straining.

This effect would increase as husbands health deteriorated with the
current circumstance and a need for medial care, also denied by the
defendant, and financial uncertainties, created additional mental
and physical strain as husband would continue to require
hospitalization,
something the WilmerHale associates were fully aware would result
from lack of funds necessary to obtain 24 hr Assisted Living Care.

The Plaintiff,  handles all affairs for the Hale family.
All Defendants violated federal and state statutes,
Gained payment for fees and equity while at the same time
disenfranchising the stockholder and continuing to
access all accounts and  managing accounts in a way
that would enrich the company and not the stockholder
for more than the known ten years such activity has
taken place instead of closing all accounts as of 2010.

109.

All officers of the companies in question, owe plaintiff(s)

a duty of care, loyalty and good faith in business and

fiduciary duty including obligations to exercise good

business practices, to act effectively in the operation of

business of that company and to act in the best interest

of the stockholder and each company failed to comply

with basic terms of corporate interests as it applied to

accommodating the needs of the stockholder and not

the needs of the corporation.

Defendants violated federal and state statutes, such as 36(b),

The Investment Company Act which states, an Investment

Company has a fiduciary duty with respect to the receipt of

compensation for services.  Therefore, a breach will occur

when an investment Co. pays fees to advisors for transactions

that cause a depletion of assets in the account when the

Plaintiff's trustee attorney  is  told by trustee  (0) holdings exist.

110.

# VII. FAILURE TO UPHOLD A DUTY OF FAIRNESS

Plaintiff incorporate by reference the allegations of paragraph 1 through 41.,as though fully set forth herein.

a duty of care, loyalty and good faith in business and fiduciary duty including obligations to exercise good business practices, to act effectively in the operation of business of that company and to act in the best interest of the stockholder and each company failed to comply with basic terms of corporate interests as it applied to accommodating the needs of the stockholder and not the needs of the corporation.

All officers of the companies in question, owe plaintiff(s) a duty of care, loyalty and good faith in business and fiduciary duty including obligations to exercise good business practices, to act effectively in the operation of business of that company and to act in the best interest

122.

of the stockholder and each company failed to comply

with basic terms of corporate interests as it applied to

accommodating the needs of the stockholder.

Silverbridge sells its Financial Advisory Corporation in 2012.

It held accounts belonging to the Peter R Hale Revocable Trust,

owned by the Plaintiffs husband.  P.O.A.,  and Trustee  authority was

granted Plaintiff, necessary to assisted Husband, Peter R Hale in

requesting sale and receipt of fundsyears before this sale occurred.

WilmerHale owned Silverbrdge,  Controllers refuse to liquidate

and transfer funds.  Controllers engage in self dealing, and a hostile

takeover of all accounts and assets within  Hale Holdings.

Stock brokers, trustees, holding company associates, and its

representatives to use and devise any scheme to bankrupt assets

and holdings within the Peter R Hale Revocable Trust and Trust

accounts privately held.

This company has a duty to provide disclosure regarding the sale

activity and did not.  Accounts are now in the possession

of trustee who worked for WilmerHale during the sale, and were transferred

to him and not the shareholder, after the sale.  It is clear there was a sale

and purchase of the Hale Trust Accounts, There were no disclosures

made from Trustee to date, nor from WilmerHale to date regarding sale,

and  disposition of Hale accounts after the sale as the acts were

deliberately done to exclude the Plaintiff, who continued to live and was

owner of the property located at 168 Bellingham Street, Chelsea, Ma

02150.  No mail was ever sent to this address from WilmerHale and Michal

Fay who prevented sale of home, ownership of a home with wheel chair

access and payment of back taxes, necessary to prevent foreclosure buy

keeping and withholding all assets held within the Peter R Hale Trust.

Wells Fargo Bank, Chase Bank, Chase Bank, NA, were clients named on

Silverbridge Statement of Holdings Exhibit (A).  They would go on to hold

accounts from the Hale Trust that had to be transferred to them by

WilmerHale while stating no accounts in their name belongs to the Hale

Trust that clearly states they were paid stockholders of the Hale Trust.

 CoumperShare, AST, are transfer agents.  Accounts from the Hale Trust

would be transferred to them to hold, transfer or sell at their discretion.

124.

All continued to refuse sale of stock to Plaintiff , provide information regarding accounts, activities involving accounts, statements, as well as any and all activity pertaining to the Hale Trust, past and present. All Corporations acting accordingly, all individuals acted accordingly, who are named Defendants to this case.

The Plaintiff, continues to research these activities which are all in violation of Antifraud Provisions of CFR Title 17-Chapter II -Part 240 -Section 240.13e-3,(a) and (1) thru 6. Private transactions by issuer affiliates.

125.

# VIII FAILURE TO UPHOLD A DUTY OF TRUST

Plaintiff incorporate by reference the allegations of paragraph 1 through 41.,as though fully set forth herein.

a duty of care, loyalty and good faith in business and fiduciary duty including obligations to exercise good business practices, to act effectively in the operation of business of that company and to act in the best interest of the stockholder and each company failed to comply with basic terms of corporate interests as it applied to accommodating the needs of the stockholder and not the needs of the corporation.

126.

handled stock accounts for Plaintiff, holding POA, to do

all business transactions for husband, as well as for husband

acting trustee on all accounts.

2.

Home was foreclosed in 2015, by Wells Fargo Bank.

3.

By refusing access to accounts, account holding disclosures,

money owed or owned by each account and continuing

to make decisions and open and close accounts without

permission of plaintiff(s), whose name each account

remained, disenfranchised the owners and left the owner

proper recourse that was not available due to lack of

resources held by the Defendants.

4.

This was intentional disenfranchisement, a blatant disregard

for the needs of the account holder and causing a situation
129.

for irrevocable harm to come to plaintiff(s) as a result of

moving, constant traveling and constant in transit by car

interacting with constant traffic, to accident related injury

to doctors apps, seeking care for medical problems that arise

as a result of constant strain on body over the past six years

dealings with Defendant(s).

5.

Plaintiff alleges each party made a decision to refuse

requests to liquidate accounts, continued doing business

with each account without  Plaintiff(s) approval.  With approval

none of the harm faced by the Plaintiff would have been

encountered.  These were intentional and reckless acts on

behalf of the defendant(s).  Such outrageous conduct caused

great distress emotionally as well as physically.

6.

  The plaintiffs husbands mental state decreased .

130.

7.

All companies refused access to accounts and assets being held, access to statements, as well as normal procedure and protocol for these types of businesses.   No exchanges regarding company holdings, financial statements managed by the managing parties, quarterly earnings, and share dividends being deposited.   There was no information given re-grading stock options, voting options.  Everything was being done without consent of shareholder.

8.

Letters were ignored, calls,  accepted and documents returned with no explanation for denial and when an explanation was given, when documentation was provided, its was not acknowledged nor honored.

9.

A POA, had to make all aware that Michael Fay acting trustee was acting against will of plaintiff(s),

131.

10.

All companies except defendants honored this request.

11.

All defendants illegally used accounts to stop plaintiff(s),

from access to account information necessary to

exercise rights of ownership for personal gain and

benefit of all other than that of the Plaintiff.

12.

According to the Will of Peter R. Hale, (EXHIBIT B) - Page 5,

the sole trustee.  It also clearly states that  Michael as standby trustee.

A trustee to fulfill obligations if Mr. Hale could not.  It is believed this

was done in duress at the time of signing.  It was agreed that his home

would be made wheel chair accessible, that back taxes would be paid

to prevent further foreclosure action by Fay and Adkins who had control of

all money belonging to Mr. Hale who was unable to walk, in a wheelchair,

 knowing  all attempts to obtain money held by these individuals were in

vain, any and all documents were signed necessary that he would

132.

continue to have housing, food and basic necessities.

13.

Refusal to sign documents was not an option as Mr. Hale always conten

that he feared for his life before and after marriage to Mr. Hale.

Illegal acts occur as a  result of Silverbridge  payments from Silverbridge.

Such acts and sales are illegal according to

17 CFR Part 201, 202, & 210.  See Silverbridge statements of

 transactions  found in Exhibit  (B) and Exhibit (C).

Mr. Fay's  name on  the Silverbridge account. , as trustee but only

Peter R Hale is the legal trustee.  Mr. Hale is currently being

barred from closing down this account that was attempted

closure now for two years unsuccessfully.  Mr. Fay is a standby

trustee according to Mr. Hales will, and standby trustees are

active  only after the death of the standing trustee.  Mr.

14.

 Hale was not dead making Mr. Fay and WilmerHale who owned

Silverbridge guilty of buying, selling and transfer of shares without

approval from Plaintiff or Mr. Hale who did not want to be forced

to negotiate with Fay and second and third parties unknown, to

133.

obtain money.

15.

Distribution  payments paid  out on the account which shows

was transferred, to Fay who paid out to the Plaintiff, who in

turn had to comply to such bribery money from the Hale Trust Fund in exchange

for services they required such as signing of deed Plaintiff, in 2011,

Wilmer Cutler Pickering Hale and Door LLP offers legal advisory services to
aviation, energy, financial services, information technology, manufacturing,
software, telecommunications, and life sciences industries. The firm's practice
areas include corporate law, intellectual property, litigation, securities, antitrust
and competition, corporate, environmental, bankruptcy and commercial, FDA,
international arbitration, trade, financial institutions, labor, tax, and real estate. Its
clientele includes Akamai Technologies, America Online, Bayer, Bear Stearns,
Boeing, Bose, Citigroup, Credit Suisse First Boston, DaimlerChrysler, J.P.
Morgan Chase, Lehman Brothers, Morgan Stanley, and Verizon
Communications. Wilmer Cutler Pickering Hale and Dorr was founded in 2004
through the merger of Hale and Dorr LLP and Wilmer Cutler Pickering LLP. The
firm is based in Washington, D.C. with additional offices in Baltimore, Maryland;
Boston, Massachusetts; Reston, Virginia; New York City; Princeton, New Jersey;
Germany; London; and Munich.

There is a possibility that mergers have been made necessary to change the
name of WilmerHale to William Cutler Pickering Hale Door, and Wilmer
Cutler Pickering Hale.  It is not known when changes were made and why
those names no longer include Hale- Dorr.

134.

It is clear that Dorr is used exclusively with WilmerHale and Hale Door, and recently the Dorr has been eliminated and the Hale name association remains but as with the last two examples, one can assume that the names are associated to one person being, William Cutler Pickering, who has chosen to make Hale inclusive with William Cutler Pickering. Offices can be found in New York, NY and Washington, DC.  Such changes have occurred over the last five years as they did not exist in 2009, when Plaintiff  married Peter R Hale, Son of Hale-Dorr founder.

It does appear chairpersons, Donald Steinberg, Howard M. Shapiro, Jamie Gorelick, William McLucas, Steven D. Singer still remain.

135.

# VIIII.

## UNFAIR BUSINESS PRACTICES
## (BUSINESS & Prof. Code 17200 et seq.)

Plaintiff incorporate by reference the allegations of paragraph 1 through 36.,as though fully set forth herein.

All officers of the companies in question, owe plaintiff(s) a duty of care, loyalty and good faith in business and fiduciary duty including obligations to exercise good business practices, to act effectively in the operation of business of that company and to act in the best interest of the stockholder and each company failed to comply with basic terms of corporate interests as it applied to accommodating the needs of the stockholder and not the needs of the corporation.

There was no way to suggest the defendant(s) would withhold funds from accounts.  It became clear after weeks of

requests to sell.  The halt to account access stopped all

117.

thoughts of pursuing legal action, a POA and later a new Trust Document and Will would result as ways to stop defendant(s) defiant and illegal activities.

The plaintiff had to act as partner for Mr. Hale in all business transactions thereafter.  This job would not have been accepted if knowing in advance, there would be a war with WilmerHale. NonTheLess, this would be the outcome.  This would cause daily activities of the Plaintiff to exceed the three hour threshold required for persons with a disability of Plaintiff.  This causes great pain and distress to entire body of the Plaintiff who had to exercise daily activity necessary to keep cashflow necessary to pay for expenses as they applied to the Hale household.

The unorthodox activities of the defendant would cause moving several times to other states as it was dangerous to continue living  without access in and out of the home currently owned. Refusal to provide money to provide wheel chair access for a person with disabilities is a violation of Title II - Americans With Disabilities Act of 1990 (ADA), FAIR HOUSING ACT.
118.

The plaintiffs health could not provide for daily assistance needed

for  husband access in and out of home.  Mr. Hale used a wheel chair &

was constricted to the home which had no wheelchair access.

The health of  Mr. health would slowly deteriorate as hopelessness was

felt due to financial and health issues . Activities of the Defendant(s) proved

mentally and physically straining for both Mr. Hale and the Plaintiff.

This effect would increase as husbands health deterioration continued as a

 result of the current circumstance, a need for a permanent home that did

not require moving each year, assisted living medical care as well as

financial uncertainties, would contributed to  additional mental

and physical strain as husband continued to require hospitalization which

would lead to his death.

 The WilmerHale Corporation and its Associates were fully aware of

detrimental consequences could result from constant financial insecurity

cause by lack of funds.  Mr. Hale had money to pay for 24 hr Assisted

Living Care for the rest of his adult life in Orlando Florida. The Defendant(s)
119.

refused to allow Mr. Hale to use money he rightfully owned to pay for this

important medical service that could have made his life expectancy much

longer.  This blantent refusal left the Plaintiff with handling all affairs for the

Hale family with limitations due to disabilities.  The refusal

to assist financially was done to cause irreparable harm to Plaintiff by

inflicting the problems that were man made.  Mr. Hale had enough money

to live comfortably,  having any medical cared  of choice but money was

being used for the benefit of Defendant(s).

Defendants violated federal and state statutes,

Gained payment for fees and equity while at the same time

disenfranchising the stockholder and continuing to

access all accounts and  managing accounts in a way

that would enrich the company and not the stockholder

for more than the known ten years such activity has

taken place instead of closing all accounts as of 2010.

All officers of the companies in question, owe plaintiff(s)

a duty of care, loyalty and good faith in business and

fiduciary duty including obligations to exercise good

business practices, to act effectively in the operation of
120.

business of that company and to act in the best interest

of the stockholder and each company failed to comply

with basic terms of corporate interests as it applied to

accommodating the needs of the stockholder and not

the needs of the corporation.

Defendants violated federal and state statutes, such as 36(b),

The Investment Company Act which states, an investment Co.

has a fiduciary duty with respect to the receipt of compensation

for services.  Therefore, a breach will occur when the

investment Co.,  pays fees to advisors for transactions that

cause a depletion of  assets in the account when the Plaintiff's

trustee attorney  is  told by trustee  (0) holdings exist.

121.

# HARM

There was a  loss of all assets have resulted in a transfer of assets

 from the plaintiff  as a result of a refusal to assist with sale of the

BP holdings Or any holdings belonging to the Peter R Hale estate.

Wells Fargo Bank, Chase Bank and Computershare, continue to

transfer This account between transfer agents,  making it

impossible to obtain,Transfer or sell this stock at any time past

To date.

With no assets to fight these large corporations, they have been

successful In having free reign over this estate by selling and

transferring all Assets by all parties involved. Together, or

separately they have succeeded in making  it impossible to  sale

the estate property and account holdings.

After acquiring the necessary fraudulent , these individuals were

able to Distribute everything  to individuals of their choosing.

# A CLAIM FOR PUNITITIVE DAMAGES BY INCLUDING A PROUCTIONOF DISCOVERY EVIDENCE

# DECLARATORY   RELIEF

Plaintiff incorporates by reference the allegations

An actual controversy has arisen and exists between each

party concerning  the following CLAIM OF LOSS:

1.      Possible Lost Earnings; Peter R Hale Revocable Trust-

Silverbridge Holdings

| | |
|---|---|
| Estimated Lost Rents | $ 540,000.00 |
| Transportation Loss | $ 50,000.00 |

134.

| | |
|---|---|
| Assisted Living | $ 20,000.00 |
| Doctor Bills | $ 10,000.00 |
| Lost Property<br>Chelsea, Ma<br>Spring, Tx<br>Miami, Fl | $ 910,000.00 |
| Taxes | $ 7,000.00 |
| Living Expenses | $ 100,000.00 |
| TOTAL ESTIMATED LOSS | $ 1,637.000.00 |

LOSS INCOME
HALE ESTATE HOLDINGS

UNDER FURTHER REVIEW

NEEDS DISCOVERY TO DETERMINE

ACTUAL LOSS / TOTAL AMORATIZATION

UNDER FURTHER REVIEW

NEEDS DISCOVERY TO DETERMINE

ACTUAL LOSS

2.    Defendants lack of compliance to Statutes and laws governing corporate law.

3.    any and all other issues that may be shown according to proof.

The plaintiff requests a trial by jury and all Judicial declarations necessary to enable both parties to ascertain all rights and duties as they pertain to this case.

The Plaintiff requests that this trial remain open and available for all interested parties to view until this case has concluded.

Plaintiff requests summons be delivered by Court Appointee or Certified Mail due to status of Pro/Se filing status.

WHEREFORE, Plaintiff(s) pray for the following relief:

1.  An award of compensatory damages in the amount to be

    shown according to proof;

2.  Declaratory relief as required herein;

3.  Attorneys fees and costs to the extent allowed by law;

4.  Punitive Damages as it applies to Corporations and acts

    made by employees, as a Corporate employer, like and

    individual employer, may be held liable for punitive

    damages where there is proof of willful and wanton

    misconduct,

    Reference: Schropp v. Crown Eurocars, Inc., 654 So.2d 1158.

5.  Such further and other relief as this court deems just and

    proper.

6,  Such relief for Mental Anguish, Pain Suffering

7.  Loss Of Family Member

8.  A trial by jury as it applies to Florida Statute 913-

Plaintiff brings this action pursuant to the authority conferred upon it by Section 21(d)

of The Exchange Act & Section 209 of the Advisors Act, 15, U.S. Code 80-b-9

Enforcement of Subchapter, seeking final judgment: (a) requiring the plaintiff to

disgorge ill-gotten gains, (b) to pay prejudgment interest, (c) to pay all attorney

fees, to impose civil money penalties by Defendant pursuant to Compensatory,

Punitive, Non Economic and Exemplary Damages:

Pursuant to the provisions of Title18-C Probate Code
Article 3-       Probate Wills & Administration
Part    6-      Personal Rep- Appointment, Control &
Termination Authority  Section 3.611
Termination Of Appointment by Removal Cure Procedure
Section 7.6 & 1-401  & MUPC-(Devisee) 7.6 Effect Of Termination
Regarding the above entitled action regarding petition above.

_____Michelle Hudson Hale_____              __4-1-2020_
                        SIGNATURE                     DATE
        _____9620 S Las Vegas Blvd #551_____
                        ADDRESS
                        ____7143690472___
                        PHONE


# CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT I MAILED A COPY OF THIS PETITION TO
    SCHMIDT &  FEDERICO, P.C. COUNSELLORS AT LAW
    C/O   WILLIAM H. SCHMIDT   PHYLLIS H. FEDERICO

TWO HUNDRED BERKELEY STREET      BOSTON, MA  02116

BY — HAND DELIVERY        BY (X)  MAILING ( on  ___4-1-2020_____

            _____Michelle Hudson Hale_____
                        SIGNATURE

Case References: ·

*State v. Neil*, 457 So. 2d 481 (Fla. 1984); *City of Miami v.*
137.
*Cornett,*  463 So. 2d 399 (Fla. 3DCA 1985).

Amendments to this pleading will be made available to

this court shortly regarding Pleadings

for any and all claims for relief not stated herein.

Dated *12-49 th* 2020

*Michelle Hudson Hale*

Michelle Hudson Hale
1309 Grand Avenue #480
Miami, Florida,  33133
1800 87203862
Pro/ Se

12/4/20

RENEE M. LIBER
MY COMMISSION # GG945846
EXPIRES: January 09, 2024





# PRIORITY® MAIL



*Overnight Priority*

ate of delivery specified*

USPS TRACKING™ included to ma international destinations.

imited international insurance.

Pick up available.*

rder supplies online.*

When used internationally, a customs eclaration label may be required.

**VISIT US AT USPS.COM®**
Label 106A, Nov 2018

## PRIORITY® ★ MAIL ★

**FROM:**

Michelle Hudson
18117 Biscayne
Suite
Aventura, Ft

**TO:** Attn:
701 Clema
# 4
W. Palm Be

---

EXPECTED DELIVERY DAY: 02/11/21

## USPS TRACKING® NUMBER



9505 5148 5338 1041 6657 31

To schedule free
Package Pickup,
scan the QR code.

**USPS.COM/PICKUP**

Label 228, March 2016          FOR D

stic only.   ✕ For Domestic shipments, the maximum weight is 70 lbs. For international shipments, the maximum weight is 4 lbs.